**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

CASE NO. 1:25-cv-24066-JB

POPEYES LOUISIANA KITCHEN, INC.,

      Plaintiff,

vs.

JAM EQUITIES OF CORALVILLE, LLC;
JAM EQUITIES OF E AVE, LLC;
JAM EQUITIES OF WATERLOO, LLC;
JAM EQUITIES OF DUBUQUE, LLC;
JAM EQUITIES OF MERLE HAY, LLC;
JAM EQUITIES OF BLAIRS FERRY, LLC;
JAM EQUITIES OF SE 14TH, LLC and
ASIF POONJA,

      Defendants.

_____/

## AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff Popeyes Louisiana Kitchen, Inc. ("Popeyes") sues Defendants Jam Equities of Coralville, LLC ("Coralville"), Jam Equities of E. Ave, LLC ("E Ave"), Jam Equities of Waterloo, LLC ("Waterloo"), Jam Equities of Dubuque, LLC ("Dubuque"), Jam Equities of Merle Hay, LLC ("Merle Hay"), Jam Equities of Blairs Ferry, LLC ("Blairs"), Jam Equities of SE 14th, LLC ("Jam 14") (Coralville, E Ave, Waterloo, Dubuque, Merle Hay, Blairs and Jam 14 shall be referred to collectively as the "Franchisee Defendants") and Asif Poonja ("Poonja") (the Franchisee Defendants and Poonja shall be referred to collectively as "Defendants") and states:

1.    This is an action to enjoin Defendants' unauthorized use of Popeyes' valuable trademarks and service marks in connection with their unlawful operation of seven restaurants as authorized POPEYES® restaurants, as well as for damages under the Lanham Act and the

agreements between the parties.

## THE PARTIES

2.      Plaintiff Popeyes is a Minnesota corporation with its principal place of business in Miami, Florida.

3.      Defendant Poonja is a citizen and resident of, and domiciled in, the State of Illinois.

4.      Defendant Coralville is an Iowa limited liability company with its principal place of business in Chicago, Illinois. Poonja is the sole member of Coralville.

5.      Defendant E Ave is an Iowa limited liability company with its principal place of business in Chicago, Illinois. Poonja is the sole member of E Ave.

6.      Defendant Waterloo is an Iowa limited liability company with its principal place of business in Chicago, Illinois. Poonja is the sole member of Waterloo.

7.      Defendant Dubuque is an Iowa limited liability company with its principal place of business in Chicago, Illinois. Poonja is the sole member of Dubuque.

8.      Defendant Merle Hay is an Iowa limited liability company with its principal place of business in Chicago, Illinois. Poonja is the sole member of Merle Hay.

9.      Defendant Blairs is an Iowa limited liability company with its principal place of business in Chicago, Illinois. Poonja is the sole member of Blairs.

10.     Defendant Jam 14 is an Iowa limited liability company with its principal place of business in Chicago, Illinois. Poonja is the sole member of Jam 14.

## JURISDICTION AND VENUE

11.     Popeyes operates and franchises restaurants throughout the world, including the United States.  Founded over twenty-five years ago, Popeyes now has more than 2,700 franchised restaurants in the world.

12.     Popeyes' franchise operations are conducted and supervised from its world headquarters located in Miami, Florida.  Popeyes, Poonja, Coralville, E Ave, Waterloo, Dubuque Merle Hay, Blairs and Jam 14 have carried on a continuous course of direct communications by mail, e-mail and by telephone through Popeyes' headquarters in Miami, Florida.

13.     The course of dealing between Popeyes and its franchisees, including Poonja, Coralville, E Ave, Waterloo, Dubuque Merle Hay, Blairs and Jam 14, shows that decision-making authority is vested in Popeyes' headquarters in Miami, Florida.

14.     Poonja, Coralville, E Ave, Waterloo, Dubuque, Merle Hay, Blairs and Jam 14 have breached contracts which were to be performed in Florida due to their failure to operate in accordance with Popeyes's standards and their failure to cease the use of the POPEYES® trademarks and system after their franchise agreements were terminated.  These breaches have caused damage to Popeyes at its headquarters in Miami, Florida.

15.     This Court has jurisdiction over this action based upon:

(a)     Section 39 of the Lanham Act, 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331, 1337, and 1338(a), for the claims arising out of Defendants' violations of Sections 32, 43(a) and 44 of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a) and 1126; and

(b)     28 U.S.C. § 1338(b), and the doctrine of supplemental jurisdiction as codified in 28 U.S.C. § 1367, for the claims arising out of Defendants' breaches of contracts and common law unfair competition.

16.     Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391 and the forum selection clauses agreed to by the parties in their written agreements.

17.     Poonja, Coralville, E Ave, Waterloo, Dubuque, Merle Hay, Blairs and Jam 14 agreed in writing that in litigation to enforce the terms of the agreements between Popeyes and

Defendants, Popeyes, as the prevailing party, shall be paid by Defendants all costs, including attorneys' fees, incurred as a result.

18.     Popeyes has engaged the undersigned counsel and has agreed to pay counsel reasonable attorneys' fees for all services rendered in this action and otherwise in connection with enforcing the agreements between Popeyes and Defendants.

## THE POPEYES MARKS

19.     To identify the source, origin and sponsorship of Popeyes' facilities, products, and services, Popeyes has extensively employed, caused to be advertised and publicized throughout the United States (and elsewhere) certain distinctive symbols as trademarks and service marks (the "Marks").  Popeyes owns and was the first to adopt and use the Marks as trademarks and service marks and all right, title and interest in and to the Marks and the design, decor and image of POPEYES® restaurants remains vested solely in Popeyes in Miami, Florida.

20.     Popeyes operates and franchises POPEYES® restaurants using the Marks on signs, menu boards, posters, uniforms, packaging, cups and other items in advertising to the public through television, print media and the internet.

21.     Set forth below is an abbreviated listing of the Marks registered to Popeyes in the United States Patent and Trademark Office:

| Trademark | Status | Application Number | Application Date | Registration Number | Registration Date | Class |
|---|---|---|---|---|---|---|
| LOVE THAT CHICKEN | Registered | 88/915690 | 05/14/2020 | 6444181 | 08/10/2021 | 43 |
| LOVE THAT CHICKEN FROM POPEYES | Registered | 73/162712 | 03/17/1978 | 1257959 | 11/15/1983 | 42 |
| LOVE THAT CHICKEN! (Stylized) LOVE THAT CHICKEN! | Registered | 73/162713 | 03/17/1978 | 1116753 | 04/17/1979 | 42 |
| P LOUISIANA KITCHEN Seal | Registered | 77/506282 | 06/24/2008 | 3681087 | 09/08/2009 | 29, 43 |

4

| Trademark | Status | Application Number | Application Date | Registration Number | Registration Date | Class |
|---|---|---|---|---|---|---|
| | | | | | | |
| POPEYES | Registered | 73/029940 | 08/19/1974 | 1021254 | 09/23/1975 | 42 |
| POPEYES | Registered | 73/052658 | 05/19/1975 | 1030944 | 01/20/1976 | 29 |
| POPEYES | Registered | 88/883839 | 04/23/2020 | 6399724 | 06/29/2021 | 29, 30, 35, 43 |
| POPEYES | Registered | 73/162707 | 03/17/1978 | 121096 | 06/26/1979 | 29 |
| POPEYES | Registered | 73/162627 | 03/17/1978 | 1121699 | 07/10/1979 | 30 |
| POPEYES | Registered | 73/766279 | 11/29/1988 | 1552225 | 08/15/1989 | 35 |
| POPEYES (Stylized Standing Letters) (Color) | Registered | 90/605817 | 03/26/2021 | 6860748 | 09/27/2022 | 43 |
| POPEYES (Stylized) | Registered | 73/361550 | 04/26/1982 | 1267567 | 02/21/1984 | 29, 30, 42 |
| POPEYES LOUISIANA KITCHEN & Design | Registered | 77/506242 | 06/24/2008 | 3681086 | 09/08/2009 | 29, 43 |
| POPEYES LOUISIANA KITCHEN (Standing Lockup) (Color) | Registered | 90/605835 | 03/26/2021 | 6860749 | 09/27/2022 | 43 |

22.     The registrations of the Marks are currently in full force and effect, and Popeyes has given notice to the public of the registration of the Marks as provided in 15 U.S.C. § 1111.

23.     Pursuant to franchise agreements between Popeyes and its franchisees, including Coralville, E Ave, Waterloo, Dubuque, Merle Hay, Blairs and Jam 14, Popeyes grants its franchisees a limited license and authority to use and display the Marks, but only in the manner prescribed by Popeyes.  In no event is a franchisee authorized to use the Marks after the expiration or termination of its franchise.  Such unauthorized use is expressly prohibited under the terms of

all Popeyes franchise agreements, including the Franchisee Defendants' franchise agreements with

Popeyes.

24.     Popeyes and its franchisees have spent many millions of dollars in the United States

and abroad advertising and promoting POPEYES® restaurants, services and products.

25.     The substantial investment made in the Marks has resulted in valuable good will

for the Marks in the United States and elsewhere and for the restaurants, products and services

bearing those marks. Popeyes' products and services have been met with popular approval and, as

a result of Popeyes' extensive sales, advertising, promotion and publicity, the public throughout

the world is familiar with the Marks. The products and services associated with the Marks are

understood by the public to be produced, marketed, sponsored, supplied by and/or affiliated with

Popeyes.

## THE POPEYES SYSTEM

26.     Popeyes has developed a comprehensive restaurant operating system ("System")

for all Popeyes' franchisees worldwide in order to protect the image of POPEYES® restaurants

and to ensure uniform, high-quality standards. The detailed specifications and procedures of the

System are set forth in Popeyes' Operating Standards Manual (the "OPS Manual").

27.     Every Popeyes franchisee is required by its franchise agreement to operate its

franchise in accordance with the OPS Manual.  The OPS Manual sets forth in detail the mandatory

Popeyes' restaurant operating standards, specifications and procedures, including rules governing

areas such as food preparation, handling, cleanliness, health, sanitation, quality and speed of

service.  In addition to these strict quality, service and cleanliness requirements, the OPS Manual

prescribes specified training procedures to ensure that these requirements are met. The OPS

Manual is a confidential Popeyes document which a franchisee is permitted to have only during

the term of the franchise agreement.

28.    Popeyes offers a broad range of services to its franchisees in order to monitor and assist a franchisee's compliance with these standards. This enables Popeyes to safeguard the integrity of POPEYES® restaurants, the System and the Marks.

29.    Integral to Popeyes' compliance and assistance program are periodic inspections and consultations undertaken by personnel specially trained to observe and advise in all areas of restaurant operating procedure. Each POPEYES® Restaurant Franchise Agreement confers upon Popeyes the right to enter the restaurant premises to perform this vital function.

30.    As a result of its substantial expenditures of money and effort in developing and implementing the System, Popeyes has established a high reputation and a positive image with the public as to the quality of products and services available at POPEYES® restaurants, which reputation and image have been, and continue to be, valuable assets of Popeyes.  Popeyes strives to maintain that reputation through its careful selection of authorized franchise owners, facilities and locations, and its careful supervision over the manner and quality of its restaurant service.

## POPEYES' AGREEMENTS WITH DEFENDANTS

31.    Collectively, Defendants owned and operated the seven restaurants which are the subject of this lawsuit as franchised POPEYES® restaurants (the "Restaurants").

32.    Coralville owned one restaurant located at 750 Coral Ridge Ave., Coralville, Iowa 52241 (the "Coralville Restaurant") using the System and the Marks, in accordance with the terms and conditions of a franchise agreement dated July 2, 2018 (the "Coralville Franchise Agreement"). A copy of the Coralville Franchise Agreement is attached as Exhibit "A."

33.    E Ave owned one restaurant located at 3401 E. Avenue NW, Cedar Rapids, Iowa 52402 (the "E Ave. Restaurant") using the System and the Marks, in accordance with the terms and conditions of a franchise agreement dated July 2, 2018 (the "E Ave Franchise Agreement").

A copy of the E Ave Franchise Agreement is attached as Exhibit "B."

34.     Waterloo owned one restaurant located at 4015 Lowes Blvd., Waterloo, Iowa 50701 (the "Waterloo Restaurant") using the System and the Marks, in accordance with the terms and conditions of a franchise agreement dated July 2, 2018 (the "Waterloo Franchise Agreement"). A copy of the Waterloo Franchise Agreement is attached as Exhibit "C."

35.     Dubuque owned one restaurant located at 4825 Asbury Road, Dubuque, Iowa 52002 (the "Dubuque Restaurant") using the System and the Marks, in accordance with the terms and conditions of a franchise agreement dated July 2, 2018 (the "Dubuque Franchise Agreement"). A copy of the Dubuque Franchise Agreement is attached as Exhibit "D."

36.     Merle Hay owned one restaurant located at 4140 Merle Hay Road, Des Moines, Iowa 50310 (the "Merle Hay Restaurant") using the System and the Marks, in accordance with the terms and conditions of a franchise agreement dated September 21, 2005 (the "Merle Hay Franchise Agreement"). A copy of the Merle Hay Franchise Agreement is attached as Exhibit "E."

37.     Defendant Blairs owned and operated one restaurant located at 370 Blairs Ferry Road, NE, Cedar Rapids, Iowa 52402 (the "Cedar Rapids Restaurant") using the System and the Marks, in accordance with the terms and conditions of a franchise agreement dated July 2, 2018 (the "Cedar Rapids Franchise Agreement"). A copy of the Cedar Rapids Franchise Agreement is attached as Exhibit "F."

38.     Defendant Jam 14 owned and operated one restaurant located at 6230 SE 14th Street, Des Moines, Iowa (the "Des Moines Restaurant") using the System and the Marks, in accordance with the terms and conditions of a franchise agreement dated December 13, 2006 (the "Des Moines Franchise Agreement") (the Coralville Franchise Agreement, the E Ave Franchise Agreement, the Waterloo Franchise Agreement, the Dubuque Franchise Agreement, the Merle

Hay Franchise Agreement, the Cedar Rapids Franchise Agreement and the Des Moines Franchise Agreement shall be referred to collectively as the "Franchise Agreements"). A copy of the Des Moines Franchise Agreement is attached as Exhibit "G."

39.     Under the terms of the Franchise Agreements, the Franchisee Defendants were required to operate and maintain the Restaurants in conformity and compliance with Popeyes' standards and specifications.

40.     The Franchise Agreements contain provisions regarding defaults and establishing the parties' rights and obligations in the event of a default by the Franchisee Defendants thereunder.  Upon termination of the Franchise Agreements, the Franchisee Defendants were obligated to, among other things, stop operating the Restaurants using the Marks, to de-identify and to comply with post-term covenants not to compete.

41.     Pursuant to written guaranties (the "Coralville Guaranty," the "Merle Hay Guaranty," the "E Ave Guaranty," the "Dubuque Guaranty," the "Waterloo Guaranty," the "Blairs Guaranty" and the "Des Moines Guaranty" shall be referred to collectively as the "Guaranties") executed in connection with the Franchisee Defendants' execution of the Franchise Agreements, Poonja unconditionally and irrevocably guaranteed the payment and performance of any and all obligations of the Franchise Defendants under the Franchise Agreements. A composite of the Guaranties is attached as Exhibit "H."

### DEFENDANTS' DEFAULTS AND TERMINATIONS

42.     Defendants breached the Franchise Agreements and Guaranties by failing to operate and/or maintain the Restaurants in conformity and compliance with Popeyes' standards and specifications with regard to food safety and brand standards.

43.     By letters dated May 16, 2025, and June 11, 2025, Popeyes notified Coralville and

Poonja of their defaults under the Coralville Franchise Agreement and demanded that they cure the defaults within the time periods set forth therein (the "Coralville Notices of Default"). The Coralville Notices of Default further notified Defendants of Popeyes' right to terminate the Coralville Franchise Agreement without affording Defendants an opportunity to cure if they committed certain defaults more than once in any twelve-month period.

44.      Despite being advised that any further defaults under the Coralville Franchise Agreement may result in the termination of the Coralville Franchise Agreement, on August 2, 2025, Coralville failed yet another inspection at the Coralville Restaurant, resulting in Popeyes issuing an August 29, 2025, Notice of Default and Termination (the "Coralville Termination Notice").

45.      By letters dated August 27, 2024, and June 11, 2025, Popeyes notified Merle Hay and Poonja of their defaults under the Merle Hay Franchise Agreement and demanded that they cure the defaults within the time periods set forth therein (the "Merle Hay Notices of Default"). The Merle Hay Notices of Default further notified Defendants of Popeyes' right to terminate the Merle Hay Franchise Agreement without affording Defendants an opportunity to cure if they committed certain defaults more than once in any twelve-month period.

46.      Despite being advised that any further defaults under the Merle Hay Franchise Agreement may result in the termination of the Merle Hay Franchise Agreement, on August 3, 2025, Merle Hay failed yet another inspection at the Merle Hay Restaurant, resulting in Popeyes issuing an August 29, 2025, Notice of Default and Termination (the "Merle Hay Termination Notice").

47.      By letters dated March 17, 2025, April 23, 2025 and June 11, 2025, Popeyes notified Dubuque and Poonja of their defaults under the Dubuque Franchise Agreement and

demanded that they cure the defaults within the time periods set forth therein (the "Dubuque Notices of Default"). The Dubuque Notices of Default further notified Defendants of Popeyes' right to terminate the Dubuque Franchise Agreement without affording Defendants an opportunity to cure if they committed certain defaults more than once in any twelve-month period.

48.     Despite being advised that any further defaults under the Dubuque Franchise Agreement may result in the termination of the Dubuque Franchise Agreement, on August 1, 2025, Dubuque failed yet another inspection at the Dubuque Restaurant, resulting in Popeyes issuing an August 29, 2025, Notice of Default and Termination (the "Dubuque Termination Notice").

49.     By letters dated June 11, 2025, June 27, 2025 and August 1, 2025 Popeyes notified Waterloo and Poonja of their defaults under the Waterloo Franchise Agreement and demanded that they cure the defaults within the time periods set forth therein (the "Waterloo Notices of Default"). The Waterloo Notices of Default further notified Defendants of Popeyes' right to terminate the Waterloo Franchise Agreement without affording Defendants an opportunity to cure if they committed certain defaults more than once in any twelve-month period.

50.     Despite being advised that any further defaults under the Waterloo Franchise Agreement may result in the termination of the Waterloo Franchise Agreement, on August 2, 2025, Waterloo failed yet another inspection at the Waterloo Restaurant, resulting in Popeyes issuing an August 29, 2025, Notice of Default and Termination (the "Waterloo Termination Notice").

51.     By letters dated October 2, 2024 and June 11, 2025, Popeyes notified E Ave and Poonja of their defaults under the E Ave Franchise Agreement and demanded that they cure the defaults within the time periods set forth therein (the "E Ave Notices of Default"). The E Ave Notices of Default further notified Defendants of Popeyes' right to terminate the E Ave Franchise Agreement without affording Defendants an opportunity to cure if they committed certain defaults

more than once in any twelve-month period.

52.     Despite being advised that any further defaults under the E Ave Franchise Agreement may result in the termination of the E Ave Franchise Agreement, on August 2, 2025, E Ave failed yet another inspection at the E Ave Restaurant, resulting in Popeyes issuing an August 29, 2025, Notice of Default and Termination (the "E Ave Termination Notice").

53.     By letters dated June 11, 2025 and August 29, 2025, 2025, Popeyes notified Blairs and Poonja of their defaults under the Cedar Rapids Franchise Agreement and demanded that they cure the defaults within the time periods set forth therein (the "Cedar Rapids Notices of Default"). The Cedar Rapids Notices of Default further notified Defendants of Popeyes' right to terminate the Cedar Rapids Franchise Agreement without affording Defendants an opportunity to cure if they committed certain defaults more than once in any twelve-month period.

54.     Despite being advised that any further defaults under the Cedar Rapids Franchise Agreement may result in the termination of the Cedar Rapids Franchise Agreement, on October 12, 2025, Blairs failed yet another inspection at the Cedar Rapids Restaurant, resulting in Popeyes issuing a November 4, 2025, Notice of Default and Termination (the "Cedar Rapids Termination Notice").

55.     By letters dated August 6, 2025 and August 29, 2025, 2025, Popeyes notified Jam 14 and Poonja of their defaults under the Des Moines Franchise Agreement and demanded that they cure the defaults within the time periods set forth therein (the "Des Moines Notices of Default"). The Des Moines Notices of Default further notified Defendants of Popeyes' right to terminate the Des Moines Franchise Agreement without affording Defendants an opportunity to cure if they committed certain defaults more than once in any twelve-month period.

56.     Despite being advised that any further defaults under the Des Moines Franchise

Agreement may result in the termination of the Des Moines Franchise Agreement, on October 23, 2025, Jam 14 failed yet another inspection at the Des Moines Restaurant, resulting in Popeyes issuing a November 4, 2025, Notice of Default and Termination (the "Des Moines Termination Notice").

57.     Terminated franchisees are prohibited from identifying themselves as either a current or former POPEYES® franchisee, from displaying or using any of Popeyes' trade secrets, promotional materials, the Marks, or any mark confusingly similar. Terminated franchisees are further required, upon termination or expiration of their POPEYES® Restaurant Franchise Agreements, to immediately make such removals or changes in signs and the building as Popeyes shall request so as to effectively distinguish the building and premises from its former appearance and from any other POPEYES® Restaurant.

58.     In violation of the Franchise Agreements and the Guaranties, Defendants Poonja, Coralville, E Ave, Waterloo, Dubuque Merle Hay, Blairs and Jam 14 continue to hold themselves out to the public as owning and operating genuine and authorized POPEYES® Restaurants by continuing to display and/or use the Marks at the Restaurants subsequent to the Franchise Agreements' terminations, and they have failed to de-identify the Restaurants. In so doing, Poonja, Coralville, E Ave, Waterloo, Dubuque, Merle Hay, Blairs and Jam 14 are all infringing upon the Marks and breaching their explicit obligations under the Franchise Agreements and Guaranties.

59.     Additionally, Poonja, Coralville, E Ave, Waterloo, Dubuque, Merle Hay, Blairs and Jam 14 have not returned the OPS Manuals and other operational manuals to Popeyes as required by the Franchise Agreements and Guaranties.

## LIKELIHOOD OF CONSUMER CONFUSION AND DECEPTION

60.     Poonja, Coralville, E Ave, Waterloo, Dubuque, Merle Hay, Blairs and Jam 14 have all failed to tender to Popeyes or remove all POPEYES® signs, logos, menu boards, posters,

translights, uniforms, plates, cups, tray liners, and other items bearing the Marks, name, symbols, or slogans, or which are otherwise identified with POPEYES® that are located at the Restaurants.

61.     Poonja, Coralville, E Ave, Waterloo, Dubuque, Merle Hay, Blairs and Jam 14's continued display of the Marks or any items associated with the POPEYES® name, symbols, or slogans at the Restaurants are without Popeyes' license or consent.  Upon seeing the familiar Marks, through Poonja, Coralville, E Ave, Waterloo, Dubuque Merle Hay, Blairs and Jam 14's unauthorized display thereof, consumers will be deceived into concluding that the Restaurants are sponsored or endorsed by Popeyes, and bear the Marks pursuant to Popeyes' authority and permission.  Such impressions will have a material influence on customers' purchasing decisions, as well as Popeyes' goodwill and reputation.

62.     Poonja, through the operation of his companies, the Franchisee Defendants, and acting in his capacity as an owner and officer of the Franchisee Defendants, has actively and knowingly used the Marks following the termination of the Franchise Agreements. Poonja directs and controls the operation of the Franchisee Defendants and the Restaurants and is responsible for marketing, which includes the unauthorized use of the Marks. Poonja actively and knowingly caused the unlawful use of the Marks and personally took part in the infringing use of the Marks through, among other things, his decision to continue using the Marks at the Restaurants following the termination of the Franchise Agreements.

63.      By reason of the foregoing, Popeyes has suffered damages, in an amount presently unknown yet substantial.

64.     Popeyes will suffer serious, immediate, and irreparable harm if Poonja, Coralville, E Ave, Waterloo, Dubuque, Merle Hay, Blairs and Jam 14's willful infringement of the Marks at the Restaurants is not immediately enjoined.  Popeyes' goodwill and reputation will suffer by

virtue of the public's identification of Popeyes with the Restaurants bearing its Marks.

65.     Poonja, Coralville, E Ave, Waterloo, Dubuque, Merle Hay, Blairs and Jam 14's display of the Marks at the Restaurants poses an immediate threat to the distinct, exclusive image Popeyes has created at great expense for its franchisees.  POPEYES® Restaurants, services, and products are known by the Marks which are emblematic of their distinctive source.  POPEYES® Restaurants enjoy a special appeal to consumers which will be diluted by the existence of the infringing restaurant with products and services bearing the distinctive Marks.  The intangible, but commercially indispensable, value that the POPEYES® Restaurants now enjoy will be severely undermined by the use and display of the Marks at the Restaurants.

66.      All conditions precedent to the institution of this action have been satisfied, discharged, excused and/or waived.

### COUNT I
### LANHAM ACT INFRINGEMENT AGAINST
### AGAINST THE FRANCHISEE DEFENDANTS

67.     Popeyes re-alleges and incorporates Paragraphs 1 through 66 above as if fully set forth herein.

68.     Poonja, Coralville, E Ave, Waterloo, Dubuque, Merle Hay, Blairs and Jam 14's acts, as described above, constitute infringements of Popeyes' registered trademarks and service marks in violation of Section 32 of the Lanham Act, 15 U.S.C. §1114.

### COUNT II
### LANHAM ACT FALSE DESIGNATIONS
### AGAINST THE FRANCHISEE DEFENDANTS

69.     Popeyes re-alleges and incorporates Paragraphs 1 through 66 above as if fully set forth herein.

70.     Poonja, Coralville, E Ave, Waterloo, Dubuque, Merle Hay, Blairs and Jam 14's

acts, as described above, constitute false designations of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

**COUNT III**
**COMMON LAW TRADEMARK INFRINGEMENT**
**AGAINST THE FRANCHISEE DEFENDANTS**

71.     Popeyes re-alleges and incorporates Paragraphs 1 through 66 above as if fully set forth herein.

72.     Poonja, Coralville, E Ave, Waterloo, Dubuque, Merle Hay, Blairs and Jam 14's acts, as described above, constitute unlawful trademark and service mark infringements under the common law.

**COUNT IV**
**COMMON LAW UNFAIR COMPETITION**
**AGAINST THE FRANCHISEE DEFENDANTS**

73.     Popeyes re-alleges and incorporates Paragraphs 1 through 66 above as if fully set forth herein.

74.     Poonja, Coralville, E Ave, Waterloo, Dubuque, Merle Hay, Blairs and Jam 14's acts, as described above, constitute unfair competition under the common law.

**COUNT V**
**BREACH OF CORALVILLE FRANCHISE AGREEMENT AGAINST CORALVILLE**

75.     Popeyes re-alleges and incorporates Paragraphs 1 through 66 above as if fully set forth herein.

76.     Coralville breached the Coralville Franchise Agreement by failing to operate the Coralville Restaurant in compliance with Popeyes' standards and specifications with regard to food safety and brand standards, despite demand.

77.     Coralville has also been in default of the Coralville Franchise Agreement more than two times within a single 12-month period.

78.      Additionally, Coralville has not complied with the post-termination obligations in the Coralville Franchise Agreement requiring, among other things, that Coralville immediately cease and desist from all use of the Marks at the Coralville Restaurant.

79.      These breaches have directly and proximately caused loss and damage to Popeyes.

**COUNT VI**
**BREACH OF CORALVILLE GUARANTY AGAINST POONJA**

80.      Popeyes re-alleges and incorporates Paragraphs 1 through 66 and 76 through 79 above as if fully set forth herein.

81.      Coralville breached the Coralville Franchise Agreement by failing to operate and maintain the Coralville Restaurant in compliance therewith.

82.      Coralville has also breached the Coralville Franchise Agreement because it has not complied with the post-termination obligations contained therein requiring, among other things, that it immediately cease and desist from all use of the Marks at the Coralville Restaurant.

83.      Pursuant to the Coralville Guaranty, Poonja jointly, severally and irrevocably guaranteed the performance of, inter alia, each and every obligation and liability of Coralville to Popeyes under the Coralville Franchise Agreement should Coralville fail to perform such obligations.

84.      The failure of Poonja to ensure Coralville's compliance with its obligations under the Coralville Franchise Agreement constitutes a breach of the Coralville Guaranty.

85.      These breaches have directly and proximately caused loss and damage to Popeyes.

**COUNT VII**
**BREACH OF E AVE FRANCHISE AGREEMENT AGAINST E AVE**

86.      Popeyes re-alleges and incorporates Paragraphs 1 through 66 above as if fully set forth herein.

87.    E Ave breached the E Ave Franchise Agreement by failing to operate the E Ave Restaurant in compliance with Popeyes' standards and specifications with regard to food safety and brand standards, despite demand.

88.    E Ave has also been in default of the E Ave Franchise Agreement more than two times within a single 12-month period.

89.    Additionally, E Ave has not complied with the post-termination obligations in the E Ave Franchise Agreement requiring, among other things, that E Ave immediately cease and desist from all use of the Marks at the E Ave Restaurant.

90.    These breaches have directly and proximately caused loss and damage to Popeyes.

**COUNT VIII**
**BREACH OF E AVE GUARANTY AGAINST POONJA**

91.    Popeyes re-alleges and incorporates Paragraphs 1 through 66 and 87 through 90 above as if fully set forth herein.

92.    E Ave breached the E Ave Franchise Agreement by failing to operate and maintain the E Ave Restaurant in compliance therewith.

93.    E Ave has also breached the E Ave Franchise Agreement because it has not complied with the post-termination obligations contained therein requiring, among other things, that it immediately cease and desist from all use of the Marks at the E Ave Restaurant.

94.    Pursuant to the E Ave Guaranty, Poonja jointly, severally and irrevocably guaranteed the performance of, inter alia, each and every obligation and liability of E Ave to Popeyes under the E Ave Franchise Agreement should E Ave fail to perform such obligations.

95.    The failure of Poonja to ensure E Ave's compliance with its obligations under the E Ave Franchise Agreement constitutes a breach of the E Ave Guaranty.

96.    These breaches have directly and proximately caused loss and damage to Popeyes.

## COUNT IX
## BREACH OF WATERLOO FRANCHISE AGREEMENT AGAINST WATERLOO

97.     Popeyes re-alleges and incorporates Paragraphs 1 through 66 above as if fully set forth herein.

98.     Waterloo breached the Waterloo Franchise Agreement by failing to operate the Waterloo Restaurant in compliance with Popeyes' standards and specifications with regard to food safety and brand standards, despite demand.

99.     Waterloo has also been in default of the Waterloo Franchise Agreement more than two times within a single 12-month period.

100.     Additionally, Waterloo has not complied with the post-termination obligations in the Waterloo Franchise Agreement requiring, among other things, that Waterloo immediately cease and desist from all use of the Marks at the Waterloo Restaurant.

101.     These breaches have directly and proximately caused loss and damage to Popeyes.

## COUNT X
## BREACH OF WATERLOO GUARANTY AGAINST POONJA

102.     Popeyes re-alleges and incorporates Paragraphs 1 through 66 and 97 through 100 above as if fully set forth herein.

103.     Waterloo breached the Waterloo Franchise Agreement by failing to operate and maintain the Waterloo Restaurant in compliance therewith.

104.     Waterloo has also breached the Waterloo Franchise Agreement because it has not complied with the post-termination obligations contained therein requiring, among other things, that it immediately cease and desist from all use of the Marks at the Waterloo Restaurant.

105.     Pursuant to the Waterloo Guaranty, Poonja jointly, severally and irrevocably guaranteed the performance of, inter alia, each and every obligation and liability of Waterloo to

Popeyes under the Waterloo Franchise Agreement should Waterloo fail to perform such obligations.

106.    The failure of Poonja to ensure Waterloo's compliance with its obligations under the Waterloo Franchise Agreement constitutes a breach of the Waterloo Guaranty.

107.    These breaches have directly and proximately caused loss and damage to Popeyes.

**COUNT XI**
**BREACH OF DUBUQUE FRANCHISE AGREEMENT AGAINST DUBUQUE**

108.    Popeyes re-alleges and incorporates Paragraphs 1 through 66 above as if fully set forth herein.

109.    Dubuque breached the Dubuque Franchise Agreement by failing to operate the Dubuque Restaurant in compliance with Popeyes' standards and specifications with regard to food safety and brand standards, despite demand.

110.    Dubuque has also been in default of the Dubuque Franchise Agreement more than two times within a single 12-month period.

111.    Additionally, Dubuque has not complied with the post-termination obligations in the Dubuque Franchise Agreement requiring, among other things, that Dubuque immediately cease and desist from all use of the Marks at the Dubuque Restaurant.

112.    These breaches have directly and proximately caused loss and damage to Popeyes.

**COUNT XII**
**BREACH OF DUBUQUE GUARANTY AGAINST POONJA**

113.    Popeyes re-alleges and incorporates Paragraphs 1 through 66 and 109 through 112 above as if fully set forth herein.

114.    Dubuque breached the Dubuque Franchise Agreement by failing to operate and maintain the Dubuque Restaurant in compliance therewith.

115.    Dubuque has also breached the Dubuque Franchise Agreement because it has not complied with the post-termination obligations contained therein requiring, among other things, that it immediately cease and desist from all use of the Marks at the Dubuque Restaurant.

116.    Pursuant to the Dubuque Guaranty, Poonja jointly, severally and irrevocably guaranteed the performance of, inter alia, each and every obligation and liability of Dubuque to Popeyes under the Dubuque Franchise Agreement should Dubuque fail to perform such obligations.

117.    The failure of Poonja to ensure Dubuque's compliance with its obligations under the Dubuque Franchise Agreement constitutes a breach of the Dubuque Guaranty.

118.    These breaches have directly and proximately caused loss and damage to Popeyes.

**COUNT XIII**
**BREACH OF MERLE HAY FRANCHISE AGREEMENT AGAINST MERLE HAY**

119.    Popeyes re-alleges and incorporates Paragraphs 1 through 66 above as if fully set forth herein.

120.    Merle Hay breached the Merle Hay Franchise Agreement by failing to operate the Merle Hay Restaurant in compliance with Popeyes' standards and specifications with regard to food safety and brand standards, despite demand.

121.    Merle Hay has also been in default of the Merle Hay Franchise Agreement more than two times within a single 12-month period.

122.    Additionally, Merle Hay has not complied with the post-termination obligations in the Merle Hay Franchise Agreement requiring, among other things, that Merle Hay immediately cease and desist from all use of the Marks at the Merle Hay Restaurant.

123.    These breaches have directly and proximately caused loss and damage to Popeyes.

**COUNT XIV**
**BREACH OF MERLE HAY GUARANTY AGAINST POONJA**

124.    Popeyes re-alleges and incorporates Paragraphs 1 through 66 and 120 through 123 above as if fully set forth herein.

125.    Merle Hay breached the Merle Hay Franchise Agreement by failing to operate and maintain the Merle Hay Restaurant in compliance therewith.

126.    Merle Hay has also breached the Merle Hay Franchise Agreement because it has not complied with the post-termination obligations contained therein requiring, among other things, that it immediately cease and desist from all use of the Marks at the Merle Hay Restaurant.

127.    Pursuant to the Merle Hay Guaranty, Poonja jointly, severally and irrevocably guaranteed the performance of, inter alia, each and every obligation and liability of Merle Hay to Popeyes under the Merle Hay Franchise Agreement should Merle Hay fail to perform such obligations.

128.    The failure of Poonja to ensure Merle Hay's compliance with its obligations under the Merle Hay Franchise Agreement constitutes a breach of the Merle Hay Guaranty.

129.    These breaches have directly and proximately caused loss and damage to Popeyes.

**COUNT XV**
**BREACH OF CEDAR RAPIDS FRANCHISE AGREEMENT AGAINST BLAIRS**

130.    Popeyes re-alleges and incorporates Paragraphs 1 through 66 above as if fully set forth herein.

131.    Blairs breached the Cedar Rapids Franchise Agreement by failing to operate the Cedar Rapids Restaurant in compliance with Popeyes' standards and specifications with regard to food safety and brand standards, despite demand.

132.    Blairs has also been in default of the Cedar Rapids Franchise Agreement more than

two times within a single 12-month period.

133.    Additionally, Blairs has not complied with the post-termination obligations in the Cedar Rapids Franchise Agreement requiring, among other things, that Blairs immediately cease and desist from all use of the Marks at the Cedar Rapids Restaurant.

134.    These breaches have directly and proximately caused loss and damage to Popeyes.

## COUNT XVI
## BREACH OF BLAIRS GUARANTY AGAINST POONJA

135.    Popeyes re-alleges and incorporates Paragraphs 1 through 66 and 131 through 134 above as if fully set forth herein.

136.    Blairs breached the Cedar Rapids Franchise Agreement by failing to operate and maintain the Cedar Rapids Restaurant in compliance therewith.

137.    Blairs has also breached the Cedar Rapids Franchise Agreement because it has not complied with the post-termination obligations contained therein requiring, among other things, that it immediately cease and desist from all use of the Marks at the Cedar Rapids Restaurant.

138.    Pursuant to the Blairs Guaranty, Poonja jointly, severally and irrevocably guaranteed the performance of, inter alia, each and every obligation and liability of Blairs to Popeyes under the Cedar Rapids Franchise Agreement should Blairs fail to perform such obligations.

139.    The failure of Poonja to ensure Blairs's compliance with its obligations under the Cedar Rapids Franchise Agreement constitutes a breach of the Blairs Guaranty.

140.    These breaches have directly and proximately caused loss and damage to Popeyes.

## COUNT XVII
## BREACH OF DES MOINES FRANCHISE AGREEMENT AGAINST JAM 14

141.    Popeyes re-alleges and incorporates Paragraphs 1 through 66 above as if fully set

forth herein.

142.    Jam 14 breached the Des Moines Franchise Agreement by failing to operate the Des Moines Restaurant in compliance with Popeyes' standards and specifications with regard to food safety and brand standards, despite demand.

143.    Jam 14 has also been in default of the Des Moines Franchise Agreement more than two times within a single 12-month period.

144.    Additionally, Jam 14 has not complied with the post-termination obligations in the Des Moines Franchise Agreement requiring, among other things, that Jam 14 immediately cease and desist from all use of the Marks at the Des Moines Restaurant.

145.    These breaches have directly and proximately caused loss and damage to Popeyes.

**COUNT XVIII**
**BREACH OF DES MOINES GUARANTY AGAINST POONJA**

146.    Popeyes re-alleges and incorporates Paragraphs 1 through 66 and 142 through 145 above as if fully set forth herein.

147.    Jam 14 breached the Des Moines Franchise Agreement by failing to operate and maintain the Des Moines Restaurant in compliance therewith.

148.    Jam 14 has also breached the Des Moines Franchise Agreement because it has not complied with the post-termination obligations contained therein requiring, among other things, that it immediately cease and desist from all use of the Marks at the Des Moines Restaurant.

149.    Pursuant to the Des Moines Guaranty, Poonja jointly, severally and irrevocably guaranteed the performance of, inter alia, each and every obligation and liability of Jam 14 to Popeyes under the Des Moines Franchise Agreement should Jam 14 fail to perform such obligations.

150.    The failure of Poonja to ensure Jam 14's compliance with its obligations under the

24

Des Moines Franchise Agreement constitutes a breach of the Des Moines Guaranty.

151.    These breaches have directly and proximately caused loss and damage to Popeyes.

## DEMAND FOR ATTORNEYS' FEES AND COSTS

The agreements at issue in this litigation provide that Defendants shall pay Popeyes all damages, costs and expenses, including reasonable attorneys' fees, incurred by Popeyes in connection with their enforcing.  Popeyes hereby demands that it be reimbursed by Defendants for all costs and expenses (including attorneys' fees) relating to prosecution of this action.

## REQUEST FOR RELIEF

WHEREFORE, Popeyes Louisiana Kitchen, Inc. demands judgment against Defendants Jam Equities of Coralville, LLC, Jam Equities of E. Ave, LLC, Jam Equities of Waterloo, LLC, Jam Equities of Dubuque, LLC, Jam Equities of Merle Hay, LLC, Jam Equities of Blairs Ferry, LLC and Jam Equities of SE 14th, LLC and Asif Poonja for:

1.    Preliminary and permanent injunctions enjoining Defendants and all persons acting on their behalf, in concert with, or under their control, from:

(a)    manufacturing, packaging, distributing, selling, advertising, displaying, or promoting any product or service bearing any of the Marks, or any colorable imitation thereof at the Restaurants;

(b)    displaying or using any of the Marks to advertise or promote the sale of, or to identify, the Restaurants, or any product or service provided therein; and

(c)    making in any manner whatsoever any statement or representation, or performing any act, likely to lead members of the public to believe that Defendants, the Restaurants and the products and services provided therein, are in any manner, directly or indirectly, associated, affiliated, or connected with, or licensed, sponsored, authorized, or approved by Popeyes to operate

25

the Restaurants.

2.      Preliminary and permanent injunctions directing Defendants and all persons acting on Defendants' behalf, in concert with Defendants, or under Defendants' control, to:

(a)      recall and deliver up to Popeyes all signs, banners, labeling, packaging, advertising, promotional, display and point-of-purchase materials from the Restaurants which bears, or refers to, any of the Marks, or any colorable imitation of the Marks;

(b)      recall and deliver up to Popeyes on all copies and editions of the OPS Manual that are in their actual or constructive, direct or indirect, possession, custody or control, including all supplements and addenda thereto and all other materials containing restaurant operating instructions, restaurant business practices, or plans of Popeyes that were used in connection with the operation of the Restaurants;

(c)      allow Popeyes, at a reasonable time, to enter the premises of the Restaurants and make whatever changes, including removal of tangible assets, that are necessary to distinguish the premises from its appearance as a POPEYES® Restaurants, and;

(d)      account and pay over to Popeyes all gains, profits, and advantages derived by Defendants from any trademark and service mark infringement, breach of contract, and unfair competition to the full extent provided for by Section 35 of the Lanham Act, 15 U.S.C. §1117 and by the controlling principles of common law.

3.      Money damages, plus three times additional actual damages Popeyes has sustained by reason of Defendants' trademark and service mark infringement and unfair competition, pursuant to Section 35 of the Lanham Act, 15 U.S.C. §1117;

4.      Punitive damages because of the willful nature of Defendants' actions;

5.      Pre-judgment interest and Popeyes' reasonable attorneys' fees and costs incurred

in protecting its rights in this action in accordance with the terms of the Franchise Agreements and because of the willful nature of the infringement, pursuant to Section 35 of the Lanham Act, 15 U.S.C. §1117;

6.      An order enjoining Defendants from owning, operating or having any interest in any Chicken Restaurant, as defined in the Franchise Agreements (other than another licensed Popeyes® restaurant), within a ten-mile radius of the Restaurants for a two-year period;

7.      Compensatory damages, lost profits, and attorneys' fees and costs against Defendants due to their breaches of the agreements;

8.      An order directing Defendants to file with the Court, and to serve on Popeyes's counsel within ten days after service of any injunction or order issued herein, or within such a reasonable time as the Court shall direct, a report, in writing and under oath, setting forth in detail the manner in which Defendants have complied with such injunction or order;

9.      All costs, disbursements, and expenses of this action; and

10.     All such other relief as this Court may deem just and proper.

Dated:  November 4, 2025                    Respectfully submitted,

                                            */s/ Aaron S. Blynn*
                                            Michael D. Joblove, Esq.
                                            Florida Bar No.: 354147
                                            mjoblove@venable.com
                                            Aaron S. Blynn, Esq.
                                            Florida Bar No.: 073464
                                            asblynn@venable.com
                                            VENABLE LLP
                                            801 Brickell Avenue
                                            Suite 1500
                                            Miami, Florida 33131
                                            Telephone: (305) 349-2300
                                            Facsimile: (305) 349-2310
                                            *Attorneys for Popeyes Louisiana Kitchen, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to all parties of record on this 4th day of November, 2025.

  /s/    Aaron S. Blynn            _
Attorney

## SERVICE LIST

Michael D. Joblove, Esq.
mjoblove@venable.com
Aaron S. Blynn, Esq.
asblynn@venable.com
VENABLE LLP
801 Brickell Avenue
Suite 1500
Miami, Florida 33131
*Attorneys for Popeyes Louisiana Kitchen, LLC*

Robert Zarco, Esq.
rzarco@zarcolaw.com
Robert Salkowski, Esq.
Rsalkowski@zarcolaw.com
Victoria Diaz, Esq.
vdiaz@zarcolaw.com
ZARCO EINHORN SALKOWSKI, P.A.
One Biscayne Tower
2 S. Biscayne Blvd., 34th Floor
Miami, Florida 33131
*Attorneys for Defendants*